**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

WILDEARTH GUARDIANS, a non-profit organization,

CENTER FOR BIOLOGICAL DIVERSITY, a non-profit organization,

     Petitioners,

vs.

JASON SUCKOW, in his official capacity as director of the U.S. Department of Agriculture's
Animal and Plant Health Inspection Service-Wildlife Services' Western Region,

ANIMAL AND PLANT HEALTH INSPECTION SERVICE–WILDLIFE SERVICES, a federal
program, and

UNITED STATES DEPARTMENT OF AGRICULTURE, a federal department,

     Federal-Respondents.

_____

**PETITION FOR REVIEW OF AGENCY ACTION**
_____

## INTRODUCTION

1. Petitioners, WildEarth Guardians *et al.*, bring this civil action against the above named Federal-Respondents (hereinafter "Wildlife Services") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, for violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*

2. Wildlife Services is a federal program within the U.S. Department of Agriculture that conducts "predator damage management" throughout Colorado. This predator damage management work involves shooting, trapping, snaring, aerial gunning, and use of various chemicals and poisons to kill black bears, bobcats, mountain lions, coyotes, and other native carnivores in Colorado. Wildlife Services kills these species largely on public lands and in response to reports of livestock depredations. In a controversial move, Wildlife Services is also expanding this work in an effort to boost the mule deer populations in Colorado.

3. This civil action challenges Wildlife Services' January 17, 2017 decision authorizing this predator damage management work in Colorado and related finding of no significant impact and environmental assessment ("EA").

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 704.

5. Venue is proper under 28 U.S.C. § 1391(b)(2) and (e).

6. Petitioners exhausted all available administrative remedies by submitting substantive comments on Wildlife Services' draft EA. This matter is ripe for judicial review. Petitioners satisfy the minimum requirements for Article III standing to pursue this civil action. Petitioners and their members have suffered, and continue to suffer, injury in fact that is caused Wildlife Services. This Court can redress this injury. There is a present and actual controversy between

the Parties. Final agency action subject to judicial review exists as required by 5 U.S.C. §§ 702 and 704.

7. This Court has authority to issue the relief requested under 28 U.S.C. §§ 2201 and 2202, and 5 U.S.C. §§ 702 and 706.

## PARTIES

8. Petitioner WILDEARTH GUARDIANS ("Guardians") is a non-profit conservation organization dedicated to protecting and restoring the wildlife, wild places, wild rivers, and the health of the West. Guardians has approximately 207,000 members and supporters across the American West, including many who reside in the State of Colorado. Guardians maintains an office in Denver, Colorado. Guardians has a long history of working to protect and restore native carnivore species across the West, including the gray wolf, mountain lions, black bears, grizzly bears, Canada lynx, fisher, and wolverine. Guardians operates a wildlife program with campaigns focused on native carnivore protection and restoration and on reining in the controversial, cruel, and destructive practices of Wildlife Services, including the use of poisoning, trapping, and aerial gunning in Colorado. Guardians brings this action on behalf of itself, its members, and its supporters.

9. Petitioner CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a national non-profit with offices throughout the United States, including Colorado. The Center is supported by more than more than 1.2 million members and supporters. The Center is dedicated to the preservation, protection, and restoration of biodiversity, native species, and ecosystems. The Center and its members have a long-standing interest in conserving native carnivores in the West. The Center and its members routinely advocate for native carnivore conservation and protection. Thousands of the Center's members and supporters reside in Colorado.

10. Petitioners and their members and supporters (collectively "Petitioners") have aesthetic, professional, recreational, and personal interests in conserving and protecting Colorado's native predators. Petitioners have long worked to protect black bears, bobcats,

coyotes, mountain lions, Canada lynx, gray wolves, and wolverine in Colorado, including work to keep them from being killed and work to ensure their continued existence on the landscape and to support their recovery throughout the state, the region, and the country. Petitioners are actively involved in working to protect black bears and mountain lion in two regions in Colorado – the Upper Arkansas River and the Roan Plateau in the Piceance Basin – where Wildlife Services is planning to conduct predator damage management. Petitioners' members live near and regularly recreate in these  areas and other areas occupied by black bears, bobcats, coyotes, mountain lions, Canada lynx, and gray wolves. Petitioners' members enjoy attempting to view black bears, bobcats, coyotes, mountain lions, Canada lynx, gray wolves, and wolverine and their sign while they recreate in the wild. Petitioners are committed to protecting Colorado's native carnivores, and, in particular, keeping these native carnivores from being caught and killed by Wildlife Services on private, public, and tribal lands in Colorado.

11. Petitioners are committed to conserving and protecting the biological integrity of public lands in Colorado (of which having native carnivores at natural population levels plays a key role) and protecting the wilderness character of designated wilderness areas, potential wilderness areas, wilderness study areas ("WSAs"), and other special management areas and wilderness-quality lands in Colorado. Petitioners' members regularly recreate in wilderness areas, potential wilderness areas, WSAs, and other special management areas and wilderness-quality lands in Colorado and enjoy the wilderness characteristics that these areas provide.

12. Petitioners also have a concrete interest in (and are committed to) ensuring Wildlife Services complies with the law, makes informed decisions about predator damage management in Colorado, takes a hard look at the environmental consequences of its decision to conduct predator damage management in Colorado, and utilizes the best available science before killing native predators and conducting predator damage management in Colorado. Petitioners have and continue to work to reform Wildlife Services' predator damage management program in the West, including Colorado. Petitioners are working to ensure more public awareness and

transparency in Wildlife Services' predator damage management program in Colorado. Petitioners do not support the use of public funds for predator damage management in Colorado.

13. Petitioners have been and continue to be adversely affected by Wildlife Services' actions and/or inactions challenged in this case. Petitioners live near and have used, routinely use, and will continue to use (and have specific plans to return soon to recreate and visit) lands in Colorado where Wildlife Services conducts predator damage management to kill native predators, including black bears, bobcats, coyotes, and mountain lions. Petitioners' interests and values (described above) in using these areas for aesthetic, recreational, professional, and other purposes have been, are, and will continue to be lessened by Wildlife Services' predator damage management activities in Colorado. Petitioners' staff, members, and supporters have witnessed the impacts of Wildlife Services' predator damage management work firsthand, viewed dead predators killed by Wildlife Services in Colorado, lost pets (or have had pets injured) in traps set for other species, and feel that their experiences are and continue to be diminished and harmed by Wildlife Services' predator damage management work.

14. Wildlife Services' predator damage management in or adjacent to designated wilderness areas, potential wilderness areas, WSAs, and special management areas and other lands with wilderness characteristics harms Petitioners' members' interests in using, enjoying, and working to protect the wilderness characteristics of these areas.

15. Wildlife Services' failure to comply with NEPA, as alleged in this petition, has and continues to injure Petitioners' interests. Wildlife Services' decision not to prepare an environmental impact statement ("EIS") and related failure to take a hard look at the impacts of predator damage management in Colorado and consider and disclose the best available science results, as alleged in this petition, in uninformed decisions and creates an increased risk of actual, threatened, and imminent harm to Petitioners' interests. Wildlife Services' failure to comply with NEPA significantly increases the risk of an unnecessary and avoidable harm to Colorado's native carnivores and wilderness quality lands (and other special management areas) and Petitioners'

4

concrete interests. Wildlife Services has largely disregarded Petitioners' timely comments and their right to be fully informed of, participate in, and to seek to influence agency decisions that are impacting their interests.

16. Wildlife Services' predator damage management program in Colorado regularly traps, injures, and kills native carnivores in Colorado (both intentionally and accidentally), which has injured and continues to injure Petitioners' interests in conserving, protecting, and keeping such carnivores from being killed or injured by Wildlife Services. Wildlife Services' targets black bears, bobcats, coyotes, and mountain lions and has accidentally killed hundreds of non-target species while conducting predator damage management in Colorado. Killing native carnivores in Colorado (whether intentionally or not) harms Petitioners' interests, lessens their enjoyment of areas in Colorado occupied by these species, and lessens their enjoyment of areas where Wildlife Services' conducts predator damage management. Wildlife Services' predator damage management also lessens Petitioners' use and enjoyment of wilderness areas, WSAs, or other special management areas where the killing of native predators has occurred and currently occurs. Petitioners' members' reduce or eliminate their recreation in areas where Wildlife Services operates. Petitioners' members' reasonably fear for the safety of themselves and their domestic animals when recreating in areas where Wildlife Services may have placed traps, snares, or chemicals, including M-44 devices.

17. If this Court grants Petitioners' requested relief, the harm to their missions, members, and supporters will be redressed, alleviated, and/or lessened. The relief requested by Petitioners, if granted, would require Wildlife Services' to take a hard look at the impacts of its predator damage management, take the best science into account, and prepare a more robust EIS (with other agency input) which may cause Wildlife Services to reduce or make significant, beneficial changes to where, when, and how it conducts predator damage management in Colorado, including if and how it kills native predators and/or engages in predator damage management in

or adjacent to wilderness and other special management areas. The relief requested by

Petitioners, if granted, would prevent Wildlife Services from conducting predator damage

management activities in Colorado (or at least parts of Colorado) until and unless it complies

fully with NEPA. If granted, the relief requested would also make it more expensive for other

state and private individuals or parties to conduct predator damage management in Colorado.

State and private entities would not be able to completely replace Wildlife Services' predator

damage management activities. The State of Colorado cannot conduct all of the activities that

Wildlife Services proposes to conduct in its EA. It is more expensive for Colorado to conduct

these activities than for Wildlife Services to conduct them. If the Court granted the relief

requested, it would result in a decrease in the offending activities.

18. Defendant JASON SUCKOW, in his official capacity as director of the U.S.

Department of Agriculture's APHIS-Wildlife Service's Western Region. Mr. Suckow is the

federal official responsible for applying and implementing the federal laws and regulations at

issue in this Petition.

19. Animal and Plant Health Inspection Service (APHIS)–WILDLIFE SERVICES, is a

federal program within the United States Department of the Agriculture. APHIS-Wildlife

Services is responsible for agency actions challenged herein.

20. Defendant the UNITED STATES DEPARTMENT OF AGRICULTURE is a federal

department responsible for applying and implementing the federal laws and regulations at issue

in this Petition.

## FACTS

21. Wildlife Services is a federal program within the U.S. Department of Agriculture that

conducts predator damage management to protect livestock, crops, agriculture lands, property,

human safety, and natural resources. In Colorado, Wildlife Services also conducts predator damage management to try to increase ungulate populations, including mule deer populations.

22.  Wildlife Services provides technical assistance for, funds, and conducts predator damage management work in Colorado. Wildlife Services uses a variety of methods, both lethal and nonlethal, for predator damage management in Colorado.

23.  Nonlethal predator damage management methods authorized for use in Colorado include fencing, use of guard dogs or herders, and various frightening devices such as propane exploders, chemical repellants, siren-strobe light devices, and spotlights.

24.  Lethal predator damage management methods authorized for use in Colorado include foothold traps, "Conibear" or body-crushing traps, cage traps, net guns, snares, catch-poles, denning, shooting, aerial gunning, and hunting dogs. Wildlife Services also uses various chemical poisons, including large gas cartridges that emit carbon monoxide (for use in dens) and sodium cyanide (for use in M-44 devices) for predator damage management in Colorado.

25. In Colorado, Wildlife Services conducts predator damage management on private, public, and tribal lands.

26.  In Colorado, Wildlife Services conducts predator damage management on National Forest lands managed by the U.S. Forest Service and on public lands managed by the Bureau of Land Management ("BLM").

27. In Colorado, Wildlife Services conducts predator damage management in or adjacent to special management areas. In Colorado, Wildlife Services has conducted or could conduct predator damage management in designated wilderness areas, WSAs, and potential wilderness areas. In Colorado, Wildlife Services has conducted or could conduct predator damage management near National Parks and near or within National Monuments, National Wildlife Refuges, National Conservation Areas, National Historic Sites, and areas of critical environmental concern ("ACECs"). In Colorado, Wildlife Services conducts predator damage

management in areas occupied by Canada lynx. In Colorado, Wildlife Services conducts predator damage management in areas that may be occupied by gray wolf and wolverine.

28.  Carnivores targeted by Wildlife Services in Colorado include, but are not limited to black bears, mountain lions, coyotes, and bobcats.

29.  Wildlife Services accidentally kills, captures, and injures non-target animals when conducting predator damage management. Wildlife Services' predator damage management has resulted in the accidental killing and/or capture of species listed as threatened or endangered under the Endangered Species Act ("ESA"). Wildlife Services' predator damage management has resulted in the accidental capture and/or killing of grizzly bears. Wildlife Services' predator damage management has resulted in the accidental capture and/or killing of Canada lynx. Wildlife Services' predator damage management has resulted in the accidental capture and/or killing of gray wolves. Wildlife Services' predator damage management has resulted in the accidental capture and/or killing of wolverine. Wildlife Services' predator damage management has resulted in the accidental capture and/or killing of bald and golden eagles. Wildlife Services' predator damage management has resulted in the accidental capture and/or killing of domestic dogs.

30.  In 1999, Wildlife Services prepared an EA for predator damage management work in eastern Colorado. In 1997, Wildlife Services prepared an EA for predator damage management work in western Colorado. The western Colorado EA was supplemented in 2001. Wildlife Services' eastern Colorado EA and western Colorado EA and 2001 supplement did not analyze the viability and impacts of using predator damage management to boost mule deer populations in Colorado. In 2005, Wildlife Services prepared a single statewide EA for Wildlife Services' predator damage management in Colorado. Wildlife Services' 2005 statewide EA did not analyze the viability and impacts of conducting predator damage management to boost mule deer populations in Colorado. Wildlife Services' 2016 EA for Colorado challenged in this case replaces the 2005 statewide EA.

31.  Wildlife Services' 2016 EA evaluates four alternatives. Wildlife Services chose alternative one as its preferred action alternative. Alternative one is the continuation of Wildlife Services' predator damage management program as authorized by the 2005 EA.

32. Under Wildlife Services' preferred and chosen alternative in the 2016 EA – alternative one (hereinafter "chosen alternative") –Wildlife Services will use predator damage management in Colorado in an attempt to boost ungulate populations, including populations of mule deer, pronghorn, and bighorn sheep. The use of predator damage management to boost populations of ungulate species in Colorado is controversial and will have uncertain effects. The State of Colorado admits that the use of predator damage management to augment ungulate species' populations in Colorado is experimental. The use of predator damage management to augment ungulate species' populations in Colorado is experimental. The best available science reveals loss of habitat is the driving cause of mule deer population decline in Colorado. Mule deer populations in Colorado have been increasing every year since 2013.The best available science reveals predator damage management is not effective at increasing ungulate species' populations in Colorado.

33.  Under the chosen alternative in the 2016 EA, Wildlife Service will use the full range of legally available lethal and nonlethal methods for predator damage management work in Colorado.

34. Under the chose alternative in the 2016 EA, Wildlife Services may conduct predator damage management throughout Colorado, including on public lands managed by the Forest Service and BLM. Under Wildlife Services' chosen alternative Wildlife Services may conduct predator damage management in and adjacent to designated wilderness areas, WSAs, and ACECs. Under Wildlife Services' chosen alternative Wildlife Services may conduct predator damage management near National Parks and within or adjacent to National Historic Sites, National Conservation Areas, National Wildlife Refuges, and National Monuments.

35. Wildlife Services' chosen alternative in the 2016 EA is a major federal action that may significantly impact the quality of the human environment.

36. On January 17, 2017, and following release of 2016 EA, Wildlife Services issued a final decision and finding of no significant impact and determined that preparation of an EIS for its predator damage management work in Colorado was not required under NEPA.

**FIRST CAUSE OF ACTION**
**(Violation of NEPA – failure to prepare EIS)**

37. Petitioners hereby incorporate all preceding paragraphs.

38. Under NEPA, Wildlife Services is required to prepare an EIS for major federal actions significantly affecting the quality of the human environment. 42 U.S.C. § 4332 (C); 40 C.F.R. § 1502.4. Wildlife Services must also provide a convincing statement of reasons explaining why the federal action does not significantly affect the quality of the human environment.

39. "Significantly" as used in NEPA requires considerations of both context and intensity. 40 C.F.R. § 1508.27. Context means the significance of the action must be analyzed in several contexts, taking into account the setting in which the action occurs. *Id*. Intensity refers to the severity of the impact and requires consideration of a number of factors, including whether impacts are beneficial or adverse, the degree of impact to public health or safety, the unique characteristics of the area(s) affected, the degree to which the effects are high controversial, the degree to which the possible effects are highly uncertain or involve unique or unknown risks, the degree to which the action may establish precedent for future actions, whether the action is related to other actions with cumulative significant effects, the degree of impact to National historic sites, the degree to which the action may adversely affect a species listed as endangered or threatened under the ESA, and whether the action threatens a violation of law. *Id*.

40. Wildlife Service's predator damage management program in Colorado – as authorized by the 2016 EA, finding of no significant impact, and decision notice – qualifies as a

major federal action "significantly" affecting the quality of the human environment. Wildlife Services' predator damage management program authorizes the use of aerial gunning and the use of traps, snares, and chemicals and poisons (including M-44s) on public lands, which impacts public health and safety. Wildlife Services' predator damage management program in Colorado adversely impacts unique and ecologically critical areas, including but not limited to, designated wilderness areas, WSA, potential wilderness, ACECs, National Parks, National Monuments, National historic sites, National conservation areas, and National Wildlife Refuges. The effects of Wildlife Services' predator damage management program on native predator populations, ecological functions, and special management areas (including wilderness character) in Colorado are highly controversial, highly uncertain, and involve unknown risks. The effects of using predator damage management to increase ungulate populations in Colorado are highly controversial, highly uncertain, and involve unknown risks. Wildlife Services' use of predator damage management in and adjacent to special management areas and as a means to increase ungulate populations establishes precedent for future actions. Wildlife Services' predator damage management in Colorado, when combined with other actions, results in cumulative significant effects to Colorado's native predators and special management areas. Wildlife Services' predator damage management in Colorado is likely to adversely affect Canada lynx, a threatened species protected under the ESA. Wildlife Services' predator damage management in Colorado violates state laws and the State Constitution, including Amendment 14.

41.  Based on the analysis in the 2016 EA, Wildlife Services determined that its predator damage management work in Colorado does not constitute a major federal action significantly affecting the quality of the human environment and that an EIS was thus not required. Wildlife Services never provided a convincing statement of reasons explaining why its predator damage management work in Colorado is not a major federal action "significantly" affecting the quality of the human environment and requiring an EIS.

42.  Wildlife Services' decision not to prepare an EIS for its predator damage management work in Colorado and related failure to provide a convincing statement of reasons explaining why an EIS is not required violates NEPA and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and constitutes "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 706 (2)(A), 706 (1).

## SECOND CAUSE OF ACTION
### (Violation of NEPA – failure to properly analyze impacts)

43. Petitioners hereby incorporate all preceding paragraphs.

44. Pursuant to NEPA, Wildlife Services must adequately consider and analyze the direct, indirect, and cumulative impacts of its decision to conduct predator damage management in Colorado. Direct impacts are caused by the action and occur at the same time and place. 40 C.F.R. § 1508.8. Indirect effects are caused by the action and are later in time or farther removed in distance, but are reasonable foreseeable. *Id.* Cumulative impacts are the impacts on the environment that result "from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions." 40 C.F.R. § 1508.7.

45.  Wildlife Services' 2016 EA, decision, and finding of no significant impact fails to adequate analyze the direct, indirect, and cumulative impacts of its predator damage management work in Colorado on: (a) black bears, mountain lions, Canada lynx, and bobcat populations; (b) ungulate populations; (c) natural ecological functions, including predator-prey relationships; and (c) special management areas, including but not limited to designated wilderness areas, WSAs, ACECs, National historic sites, National Parks, National Monuments, National Wildlife Refuges, and National conservation areas in Colorado.

46.  Wildlife Services' failure to adequately consider and analyze direct, indirect, and cumulative impacts of its predator damage management work in Colorado violates NEPA and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law " and

constitutes "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 706 (2)(A), 706 (1).

### THIRD CAUSE OF ACTION
**(Violation of NEPA – failure to use best science and disclose opposing views)**

47. Petitioners hereby incorporate all preceding paragraphs.

48. Under NEPA, Wildlife Services is required to insure the professional integrity, including scientific integrity, of the discussions and analyses included in its NEPA document. 40 C.F.R. § 1502.24. Information contained in NEPA documents must be "of high quality." 40 C.F.R. § 1500.1(b). Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA. *Id*. Wildlife Services may not rely on incorrect assumptions or data, fail to disclose scientific gaps and shortcomings in the data, literature or models used, or mislead the public about various scientific findings and conclusions. NEPA also requires Wildlife Services to disclose responsible opposing views and opinions. 40 C.F.R. § 1502.9 (b).

49. Wildlife Services' 2016 EA, decision, and finding of no significant impact fails to use and rely on the best scientific information available, fails to provide studies and analysis in support of its conclusions, and fails to disclose opposing views and opinions on the controversy surrounding and likely adverse effects of its predator damage management work in Colorado.

50. Wildlife Services' failure to use and rely on the best scientific information available, provide studies and analysis in support of its conclusions, and disclose opposing views and opinions on the likely adverse effects of its predator damage management work in Colorado violates NEPA and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and constitutes "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 706 (2)(A), 706 (1).

**REQUEST FOR RELIEF**

WHEREFORE, Petitioners respectfully request this Court:

A.  Declare Wildlife Services violated the law as alleged above;

B.  Remand this matter to Wildlife Services for further proceedings, consistent with this Court's order;

C. Vacate Wildlife Services' decision notice, finding of no significant impact, and EA pending compliance with the law;

D.  Award Petitioners their reasonable attorneys' fees, costs and expenses of litigation;

E.  Issue any other relief, including injunctive relief, that this Court deems necessary, just, or proper or relief that Petitioners may subsequently request.

Respectfully submitted this 12th day of April, 2017.

/s/ Matthew K. Bishop
Matthew K. Bishop (MT Bar # 9968)
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
Phone: (406) 324-8011
Email: bishop@westernlaw.org

/s/ John R. Mellgren
John R. Mellgren (OR Bar # 114620)
Western Environmental Law Center
1216 Lincoln Street
Eugene, Oregon 97401
Phone: (541) 359-0990
Email: mellgren@westernlaw.org

/s/ Stuart Wilcox
Stuart Wilcox (CO Bar # 44972)
WildEarth Guardians
2590 Walnut Street
Denver, CO 80205
Phone: (720) 331-0385
Email: swilcox@wildearthguardians.org

*Attorneys for Petitioners*

**WildEarth Guardians**
2590 Walnut St.
Denver, CO 80205

**Center for Biological Diversity**
P.O. Box 710
Tucson, AZ 85702-0710